UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARYLAND CASUALTY COMPANY,      CASE NO.:  3:12-cv-121-J-34MCR
a Maryland corporation,

       Plaintiff, Counter-Defendant,

vs.

SHREEJEE NI PEDHI'S, INC. d/b/a
BOMBAY LIQUORS, a Florida corporation,
Et al.

       Defendant, Counter-Plaintiff,
       Third Party Plaintiff,

vs.

LABRATO INSURANCE & BONDING,
INC., a Florida Corporation,

       Third Party Defendant.
_____/

**DEFENDANT, SHREEJEE NI PEDHI'S, INC. d/b/a BOMBAY LIQUORS' ANSWER,
AFFIRMATIVE DEFENSES AND DEMAND FOR JURY TRIAL TO
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES
AND
SECOND AMENDED COUNTERCLAIM
AGAINST MARYLAND CASUALTY COMPANY
AND
THIRD PARTY COMPANY AGAINST LABRATO INSURANCE & BONDING, INC.**

Defendant, SHREEJEE NI PEDHI'S, INC. d/b/a BOMBAY LIQUORS (hereinafter referred to as "BOMBAY"), serves its Answer, Affirmative Defenses and Demand for Jury Trial to Plaintiff, MARYLAND CASUALTY COMPANY's Complaint for Declaratory Relief and Damages, as follows:

## NATURE OF ACTION

1.      The allegations contained in this paragraph are conclusions of law and not allegations of fact and BOMBAY deems that no response is required. To the extent that a response is required, BOMBAY denies each and every such allegation and demands strict proof thereof.

## JURISDICTION AND VENUE

2.      The amount in controversy is unknown to BOMBAY; therefore, this allegation is denied.

3.      BOMBAY admits that venue is proper in Clay County, Florida; however, denied as to whether venue is proper in this district in light of BOMBAY's response to Paragraph 2 above.

4.      Denied.

## THE PARTIES

5.      Admitted only that MARYLAND CASUALTY COMPANY (hereinafter "MARYLAND CASUALTY") is an insurance company incorporated under the laws of Maryland with its principal place of business in Maryland; BOMBAY denies the remainder of this allegation.

6.      Admitted that BOMBAY is a liquor, wine and package store and that one of its stores is located at 2710 Blanding Boulevard, Middleburg, Florida and BOMBAY seeks coverage for the underlying lawsuit under its MARYLAND CASUALTY policy; otherwise denied.

7.      Admitted for jurisdiction purposes; otherwise, denied.

## COMMON ALLEGATIONS

8.  Admitted.

9.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

10.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

11.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

12.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

13.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

14.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

15.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

16.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

17.  Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and as it speaks for itself.

18.  Unknown to BOMBAY if Exhibit "B" is a complete copy of the Policy; hence denied.

19.     Denied.

20.     Admitted that Maryland Casualty is defending BOMBAY in the underlying lawsuit based upon a reservation of right issued after a denial of coverage and defense on August 18, 2011; otherwise, denied.

21.     The allegations contained in this paragraph are conclusions of law and not allegations of fact and BOMBAY deems that no response is required. To the extent that a response is required, BOMBAY denies each and every such allegation and demands strict proof thereof.

## COUNT I – NO COVERAGE DUE TO THE EXCLUSION FOR LIQUOR LIABILITY

22.     BOMBAY incorporates its answers to each and every allegation set forth above in paragraphs 1-21 as if fully set forth herein.

23.     Denied.

24.     Denied.

25.     Denied as to each and every allegation in this paragraph and would refer to the Amended Complaint for completeness and it speaks for itself.

26.     Denied.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint for Declaratory Action should be dismissed as it fails to include all interested parties to the underlying litigation; therefore, MARYLAND CASUALTY should be barred from seeking relief.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches, unclean hands and/or acquiescence.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff misrepresented the benefits, advantages, conditions, terms and coverage provided under the Zurich North America's Small Business Retail Insurance Coverage Policy. Therefore, Plaintiff should be barred from seeking relief and its Complaint should be dismissed.

## FOURTH AFFIRMATIVE DEFENSE

The coverage provided by Plaintiff to BOMBAY was illusory.  Therefore, Plaintiff should be barred from seeking relief and its Complaint should be dismissed.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff breached its duty to BOMBAY by failing to provide services, among others, to analyze and reduce loss exposure as required by Florida law.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff is barred from denying coverage in that it accepted the benefits of the subject contract, specifically payments from the Defendant, and is now estopped from denying or renouncing its obligations to provide full coverage to BOMBAY as was represented.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff, MARYLAND CASUALTY, lacks standing to bring this action and, therefore, this action should be dismissed.

## EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff is barred from denying coverage of the claim made against its insured

because the exclusion upon which Plaintiff relies is repugnant to the general agreement and frustrates the purpose of the Small Business Retail Contract, which is, *inter alia,* to provide coverage to a retail business selling liquor and wine, which MARYLAND CASUALTY was fully aware of prior to issuance of the insurance policy.

### RESERVATION OF RIGHT TO ASSERT DEFENSES

BOMBAY expressly reserves the right to assert all other affirmative defenses that become known to it through the course of discovery in this matter by seeking leave to amend or by consent of the parties as permitted by the rules.

### REQUEST FOR ATTORNEY'S FEES

BOMBAY seeks an award of attorney's fees and costs against MARYLAND CASUALTY under Florida Statute § 627.428 and any other applicable statute or case law, as is appropriate and just under the circumstances.

### DEMAND FOR JURY TRIAL

BOMBAY demands trial by jury on all issues so triable.

**WHEREFORE, PREMISES CONSIDERED**, BOMBAY hereby requests this Honorable Court to enter judgment against Plaintiff, and in its favor, as to all issues and matters set forth in the Plaintiff's Complaint, and awarding to BOMBAY its attorney's fees and taxable costs and such further relief as is appropriate and just under the circumstances.

### SECOND AMENDED COUNTERCLAIM AGAINST COUNTER-DEFENDANT, MARYLAND CASUALTY COMPANY

Defendant/Counter-Plaintiff, SHREEJEE NI PEDHI'S, INC. d/b/a BOMBAY LIQUORS (hereinafter referred to as "BOMBAY"), by and through its undersigned attorneys and files its Second Amended Counterclaim against MARYLAND CASUALTY COMPANY (hereinafter

"MARYLAND CASUALTY").  BOMBAY respectfully states as follows:

1.      Jurisdiction lies within this Court pursuant to 28 U.S.C. § 1367, where the events giving rise to this counterclaim are related to Plaintiff/Counter-Defendant MARYLAND CASUALTY's Complaint for declaratory relief.

2.      Counter-Plaintiff BOMBAY is a Florida Corporation with its principal place of business in Clay County, Florida.

3.      Counter-Defendant MARYLAND CASUALTY is a Maryland Corporation with its principal place of business in the state of Maryland.

4.      Counter-Defendant MARYLAND CASUALTY is a foreign insurance carrier which is authorized to conduct business in the State of Florida by the Florida Department of Financial Services.

5.      At all times material, MARYLAND CASUALTY's parent company was ZURICH NORTH AMERICA (hereinafter "ZURICH").

6.      Terry L. Case and Elizabeth R. Case are personal representative of the Estate of Catherine E. Case.  At all times material and based upon information and belief, Mr. and Mrs. Case, as well as the decedent at the time of her death, resided in Duval County, Florida.

7.      Since 2004, MARYLAND CASUALTY/ZURICH insured BOMBAY under Zurich North America's Small Business Retail Insurance Coverage.  True and correct copies of documents furnished by MARYLAND CASUALTY are attached hereto as composite **Exhibit "1."**

8.      At all times material, MARYLAND CASUALTY, through its parent company ZURICH NORTH AMERICA, issued the Small Business Retail Insurance Policy to BOMBAY.

9.     The policies issued to BOMBAY by MARYLAND CASUALTY/ZURICH are described as a BOP policy.

10.     At all times material, LABRATO INSURANCE & BONDING, INC. was the agent of MARYLAND CASUALTY/ZURICH.

11.     ZURICH identifies its place of business in Jacksonville, Florida as LABRATO INSURANCE & BONDING, INC., 6161 Arlington Expressway, Jacksonville, Florida.

12.     At all times material, MARYLAND CASUALTY/ZURICH considers LABRATO INSURANCE & BONDING, INC. as its "electronic partner."

13.     At all times material, LABRATO INSURANCE & BONDING, INC. is MARYLAND CASUALTY/ZURICH's "authorized representative."

14.     At all times material, LABRATO INSURANCE & BONDING, INC., as the "authorized representative" has the authority to approve policy changes.

15.     In 2004, LABRATO INSURANCE & BONDING, INC. was the top performing agent for MARYLAND CASUALTY/ZURICH's small business sector in Jacksonville.

16.     At all times material, LABRATO INSURANCE & BONDING, INC. as the "authorized representative" had the authority to act on the behalf of MARYLAND CASUALTY/ZURICH, as well as to increase policy limits within the Zurich North America's Small Business Retail Insurance Policy classes.

17.     At all times material, LABRATO INSURANCE & BONDING, INC. was provided with, and given access to, a secure website, authored by MARYLAND CASUALTY/ZURICH, which would provide its agent with, among other items, blank applications, training materials, information about the MARYLAND CASUALTY/ZURICH's

services, policies and procedures.

18.     At all times material, LABRATO INSURANCE & BONDING, INC. was able to accept payment of the insurance premium on behalf of MARYLAND CASUALTY/ZURICH.

19.     Further, MARYLAND CASUALTY/ZURICH provided training to LABRATO INSURANCE & BONDING, INC. concerning its policies and procedures, as well as tailoring its insurance policies to meet the needs of MARYLAND CASUALTY/ZURICH's Small Business Customers such as BOMBAY.   The training either occurred at LABRATO's office, by telephone, on MARYLAND CASUALTY/ZURICH's secure website, or at conference held throughout the United States.

20.     With respect to the services it provides and at all times material, MARYLAND CASUALTY/ZURICH made statements, on its website, to the general public, including BOMBAY, declaring, "we can tailor to the precise needs of your small business." See http://secure.zurichna.com/zus/industrys.nsf/pages/Zurich+North+America+connects+to+the+Small+Business+market.

21.     At all times material, ZURICH INSURANCE SERVICES, INC. is the agent of MARYLAND CASUALTY/ZURICH.

22.     ZURICH INSURANCE SERVICES, INC., which was hired by MARYLAND CASUALTY/ZURICH to service its insurance policies, made statements on its website, on behalf of MARYLAND CASUALTY/ZURICH.   These statements were made to the general public, including BOMBAY LIQOURS, and to its agents, such as LABRATO INSURANCE & BONDING, INC., that "Zurich North America Small Business has a comprehensive product portfolio…tailored to the unique needs of your small business customers."  See **Exhibit "2."**

23.     At all times material, ZURICH INSURANCE SERVICES, INC. provided

marketing support for MARYLAND CASUALTY/ZURICH and training to its agents, as well as tailoring its insurance policies to meet the needs of MARYLAND CASUALTY/ZURICH's Small Business Customers such as BOMBAY.

24.    At all times material, Charles Bryant was an insurance agent at LABRATO INSURANCE & BONDING, INC. as was authorized to act on behalf of MARYLAND CASUALTY/ZURICH.

25.    On or about February 27, 2004, Ravindu Patel, on behalf of BOMBAY, communicated to MARYLAND CASUALTY/ZURICH's agent, Charles Bryant that he wanted "full coverage" that would be tailored to the needs of its unique business, a retail business that primarily sold liquor and wine and which would cover BOMBAY for the main risk of its business arising from the sale of liquor and wine.

26.    On or about February 27, 2004, Charles Bryant of LABRATO INSURANCE & BONDING, INC. accessed the secure website of MARYLAND CASUALTY/ZURICH and secured an insurance policy using MARYLAND CASUALTY/ZURICH's online application.

27.    At all times material, the online application, which was created by MARYLAND CASUALTY/ZURICH and housed on its secure website, could not be altered or changed by LABRATO INSURANCE & BONDING, INC.

28.    As soon as the electronic information was entered by Charles Bryant of LABRATO INSURANCE & BONDING, INC., the policy of insurance covering BOMBAY was issued and in effect.

29.    At the time that MARYLAND CASUALTY/ZURICH issued the Small Business Retail Insurance Policy to BOMBAY, it was aware that it was insuring a retail business that

primarily sold liquor and wine.

30.     At all times material, Charles Bryant of LABRATO INSURANCE & BONDING, INC. represented to Ravindu Patel of BOMBAY that MARYLAND CASUALTY/ZURICH had issued a policy to BOMBAY which covered him for, among other items, losses arising out of the sale of liquor and wine.

31.     On March 10, 2004, B. Edenfield of ZURICH INSURANCE SERVICES, INC. at the request of MARYLAND CASUALTY/ZURICH, reviewed the policy, and failing to adhere to MARYLAND CASUALTY and/or ZURICH's statement that it would tailor the policy to the unique needs of the small business retail customer, confirmed that BOMBAY LIQUOR was a "Retail Hard Liquor" Business and indicated "Everything Fits."

32.     On March 10, 2004, ZURICH INSURANCE SERVICES, INC. did not make a determination that BOMBAY was covered for risks associated with its unique retail business needs arising out of the sale of liquor and wine.

33.     At no time did any human being at MARYLAND CASUALTY/ZURICH attempt to tailor the policy issued to BOMBAY to meet the needs of its business, i.e. to cover it for risks arising out of the sale of liquor and wine.

34.     At all times material, MARYLAND CASUALTY/ZURICH offered Liquor Liability Coverage under its BOP Policy.

35.     Upon information and belief, MARYLAND CASUALTY/ZURICH never evaluated the risks of BOMBAY pursuant to Fla. Stat. § 627.0625 which would reduce loss exposures which would arise out of the sale of alcohol.

36.     Since 2004, BOMBAY paid its premium to Zurich North America, the parent

-11-

company of MARYLAND CASUALTY.

37.    On or about August 4, 2011, BOMBAY was provided with notice of the underlying claim being made by the Case family arising out of the purported sale of liquor by BOMBAY.

38.    Upon receipt of the August 4, 2011 claim from the Case Family, BOMBAY provided timely notice of the letter to MARYLAND CASUALTY/ZURICH's agent, LABRATO INSURANCE & BONDING, INC.

39.    For the first time since the issuance of the 2004 policy, MARYLAND CASUALTY advised BOMBAY that the Small Business Retail Insurance Policy did not provide comprehensive coverage to BOMBAY for its main risk, i.e. the selling of liquor and wine.

40.    At all times material, BOMBAY believed that it was provided with full coverage and that it would be insured for a loss arising out of the sale of liquor or wine.

41.    Had MARYLAND CASUALTY/ZURICH issued Liquor Liability Coverage to BOMBAY, it would have been covered for an "injury" arising out of the sale of liquor, such as the claim brought by the Case family.

42.    On or about August 18, 2011, correspondence was forwarded by Farmers Insurance Exchange on behalf of MARYLAND CASUALTY, denying coverage to BOMBAY. See **Exhibit "3."**

43.    Upon receipt of the August 18, 2011 letter, Ravindu Patel of BOMBAY communicated with Charles Bryant of LABRATO INSURANCE & BONDING, INC. as to the contents of the letter and MARYLAND CASAULTY/ZURICH's denial of coverage.   Mr. Bryant informed Mr. Patel that he was in dismay because he believed that there was coverage

available for the aforementioned <u>Case</u> claim.

44.     Even after being put on notice that MARYLAND CASUALTY/ZURICH did not provide insurance coverage that would cover the unique needs of BOMBAY, a retail business who primarily sold wine and liquor, on February 27, 2012 MARYLAND CASUALTY/ZURICH, yet again, offered to issue an insurance policy to BOMBAY that did not provide coverage for claims arising out of the sale of liquor.

45.     Because of MARYLAND CASUALTY/ZURICH's refusal to provide coverage, BOMBAY had to retain the legal services of the firm of McDonald Toole Wiggins, P.A. and incur attorney's fees and costs.

46.     Upon receipt of the lawsuit, on December 20, 2011, BOMBAY notified MARYLAND CASUALTY/ZURICH of the Complaint, BOMBAY's deadline to respond to the Complaint, and BOMBAY again asked for coverage and a defense.

47.     As no timely response was received by December 27, 2011 (BOMBAY's deadline to respond to the Complaint), a second letter was forwarded on January 5, 2012, to MARYLAND CASUALTY/ZURICH asking for a response.

48.     An extension of time was obtained to respond to the Case Complaint, however, as no response was provided by MARYLAND CASUALTY/ZURICH, an Answer to the Complaint and discovery was propounded upon the parties by McDonald Toole Wiggins, P.A. on January 6, 2012.

49.     On or about January 12, 2012, a reservation of rights letter was issued by MARYLAND CASUALTY/ZURICH claiming that there were coverage issues, and MARYLAND CASUALTY/ZURICH would proceed to defend the matter under a complete

reservation of rights.  <u>See</u> **Exhibit "4."**

**COUNT I – NEGLIGENT MISREPRESENTATION**
**OF MARYLAND CASUALTY COMPANY**

50.    Paragraphs 1 through 49 are repeated and realleged as if fully set forth herein.

51.    At all times material, MARYLAND CASUALTY/ZURICH purported to provide comprehensive coverage under its Small Business Retail Insurance Program to small retail businesses in Florida and would tailor its program to the unique needs of the small business customer.

52.    At all times material, MARYLAND CASUALTY/ZURICH was fully aware that BOMBAY'S retail business was exclusive to the sale of liquor and wine and that its main risk would arise from such liquor and wine sales (hereinafter referred to as "the main risk").

53.    Knowing this information, MARYLAND CASUALTY/ZURICH, individually and by and through its agent, LABRATO INSURANCE & BONDING, INC.,  misrepresented to BOMBAY that it would provide comprehensive insurance coverage to cover its main retail business risks under its Small Business Insurance Program.

54.    More specifically, Charles Bryant of LABRATO INSURANCE & BONDING, INC., as agent for MARYLAND CASUALTY/ZURICH, represented to BOMBAY that it would receive full coverage which included liquor liability coverage.

55.    Based upon these representations, BOMBAY believed MARYLAND CASUALTY/ZURICH was providing liquor liability coverage.

56.    Despite these representations, MARYLAND CASUALTY/ZURICH failed to take any steps to ensure that the insurance coverage being provided to BOMBAY was tailored to the needs of BOMBAY's unique business, a retail business that primarily sold liquor and wine.

-14-

57.     Moreover, MARYLAND CASUALTY/ZURICH failed to take any steps to ensure that BOMBAY was provided with liquor liability coverage, as previously represented.

58.     Instead, MARYLAND CASUALTY/ZURICH issued to BOMBAY a Retail Small Business Insurance Policy and excluded from coverage liability arising out the sale of liquor and wine, the main risk of the business.  See **Exhibit "1."**

59.     In doing so, MARYLAND CASUALTY/ZURICH, individually and through the representations made by its agent, LABRATO INSURANCE & BONDING, INC., knowingly misrepresented the insurance coverage being provided to BOMBAY.

60.     MARYLAND CASUALTY/ZURICH, through its actions and the actions of its agent, LABRATO INSURANCE & BONDING, INC., intended to induce BOMBAY to rely on these misrepresentations so that BOMBAY would pay a premium for coverage.

61.     Due to BOMBAY'S justifiable reliance on said misrepresentations, Counter-Plaintiff BOMBAY has suffered injury, to wit, the possible denial of insurance coverage, exposure to claims, the incurring of attorney's fees and costs to defend the Maryland litigation, as well as the Case litigation and would request reformation of the insurance policy based upon the above misrepresentation(s).

### COUNT II – NEGLIGENCE AGAINST MARYLAND CASUALTY COMPANY

62.     Paragraphs 1 through 49 are repeated and realleged as if fully set forth herein.

63.     At all times material, MARYLAND CASUALTY/ZURICH, individually and by and through its agents, purported to provide comprehensive coverage under its Small Business Retail Insurance Program to small retail businesses in Florida.

64.     At all times material, MARYLAND CASUALTY/ZURICH was fully aware that

BOMBAY'S retail business was exclusive to the sale of liquor and wine and that its main risk would arise from such liquor and wine sales (hereinafter referred to as "the main risk").

65.     At all times material, MARYLAND CASUALTY/ZURICH undertook a duty to provide comprehensive insurance coverage to BOMBAY, a small retail business in Florida, to cover the main risk under its Small Business Insurance Program and to meet its unique business needs.

66.     At all times material, MARYLAND CASUALTY/ZURICH breached its duty by failing to protect its insured, BOMBAY, from the risk arising out of BOMBAY's main business risk, i.e., the selling of liquor and wine, when it issued a Retail Small Business Insurance Policy to BOMBAY and excluded from coverage liability arising out the sale of liquor and wine which resulted in, among others, illusory coverage.

67.     As a result of this breach, Counter-Plaintiff BOMBAY has suffered injury, to wit, the possibly denial of insurance coverage, exposure to claims, the incurring of attorney's fees and costs to defend the Maryland litigation, as well as the Case litigation and would request reformation of the insurance policy based upon this misrepresentation.

## COUNT III – REFORMATION OF INSURANCE CONTRACT DUE TO INEQUITABLE CONDUCT OF MARYLAND CASUALTY COMPANY

68.     Paragraphs 1 through 60 and 63 through 66 are repeated and realleged as if fully set forth herein.

69.     Reformation is sought as there is no adequate remedy at law that would provide insurance coverage for the losses brought by the Case family.

70.     At all times material, MARYLAND CASUALTY/ZURICH, Individually and by and through its agents, represented to the public and small businesses that it provided

comprehensive coverage under its Small Business Retail Insurance Program to small retail businesses and that its program was tailored to the unique needs of its small business customers.

71.     At all times material, MARYLAND CASUALTY/ZURICH, Individually and by and through its agents, engaged in an ongoing corporate scheme, pattern and practice of suppression, misrepresentation, or failure to reveal pertinent facts relating to its Small Business Retail Insurance Program. Specifically, MARYLAND CASUALTY/ZURICH, Individually and by and through its agents, deceived BOMBAY because even though it represented that it would insure a retail business under its Small Business Retail Insurance Program providing a comprehensive product for its unique needs, MARYLAND CASUALTY/ZURICH did not provide a comprehensive product to cover the unique needs of BOMBAY's business, i.e., the sale of liquor and wine -- the main risk of BOMBAY's business.

72.     Although MARYLAND CASUALTY/ZURICH was aware that BOMBAY's main risk of loss was the sale of liquor and wine, MARYLAND CASUALTY/ZURICH intending to deceive BOMBAY and its insureds, knowingly issued insurance policies to small business owners such as BOMBAY, under its Small Business Retail Insurance Program, which misrepresented the benefits, conditions or terms of the policy.  For instance, the title of the program "Small Business Retail Insurance Program" as well as the images depicted on the policy cover illustrating a shopping bag, misrepresents the coverages provided to retail business, who, among other merchandise, sell liquor and/or wine to the general public.  See **Exhibit "1"** at Page 1.

73.     At all times material, Counter-Plaintiff BOMBAY believed it was covered for losses arising out of the sale of alcohol (liquor and wine), the main risk of loss for its business.

74. At all times material, it was the intention of Charles Bryant of LABRATO INSURANCE COMPANY and MARYLAND CASUALTY/ZURICH that the policy issued to BOMBAY would cover it for claims arising out of the sale of alcohol and liquor and it was the understanding of BOMBAY that he would be covered for such losses.

75. BOMBAY was induced into the understanding that it was covered for its main business risk, the sale of liquor and wine, based upon MARYLAND CASUALTY/ZURICH's inequitable conduct.

76. Further, if the policy did not embody that agreement, it was the result of:

    a. A mutual mistake of law or fact;

    b. a unilateral mistake by BOMBAY coupled with the inequitable conduct MARYLAND CASUALTY/ZURICH and LABRATO INSURANCE & BONDING, INC.

    c. inadvertence; or

    d. accident.

and the policy must be reformed to reflect the true intention of the parties by providing coverage for claims arising out of the sale of alcohol – BOMBAY's main business risk.

WHEREFORE, the Defendant/Counter-Plaintiff, SHREEJEE NI PEDHI'S, INC. d/b/a BOMBAY, demands judgment for damages and special damages (including, but not limited to those items listed herein), including reformation of the insurance contract, together with interest, costs, and reasonable attorney's fees against the Counter-Defendant, MARYLAND INSURANCE COMPANY, and any other further relief that this court may deem proper and necessary.

## THIRD PARTY COMPLAINT AGAINST
## LABRATO INSURANCE & BONDING, INC.

Defendant/Counter-Plaintiff, Third Party Plaintiff, SHREEJEE NI PEDHI'S, INC. d/b/a BOMBAY LIQUORS (hereinafter referred to as "BOMBAY"), by and through its undersigned attorneys, and files its Third Party Complaint against LABRATO INSURANCE & BONDING, INC. (hereinafter "LABRATO INSURANCE"). BOMBAY respectfully states as follows:

1.     Jurisdiction lies within this Court pursuant to 28 U.S.C. § 1367, where the events giving rise to this counterclaim are related to Plaintiff/Counter-Defendant MARYLAND CASUALTY's Complaint for declaratory relief.

2.     Third Party Plaintiff BOMBAY is a Florida Corporation with its principal place of business in Clay County, Florida.

3.     Third Party Defendant LABRATO INSURANCE is a Florida Corporation with its principal place of business in Jacksonville, Florida.

4.     At all times material, LABRATO INSURANCE was the agent of MARYLAND CASUALTY COMPANY (hereinafter "MARYLAND CASUALTY").

5.     At all times material, MARYLAND CASUALTY's parent company was ZURICH NORTH AMERICA (hereinafter "ZURICH").

6.     ZURICH identifies its place of business in Jacksonville, Florida as LABRATO INSURANCE, 6161 Arlington Expressway, Jacksonville, Florida.

7.     At all times material, ZURICH INSURANCE SERVICES, INC. is an agent of MARYLAND CASUALTY/ZURICH.

8.     At all times material, MARYLAND CASUALTY/ZURICH considered LABRATO INSURANCE to be its "electronic partner."

-19-

9.      At all times material, LABRATO INSURANCE was provided with, and given access to, a secure website, authored by MARYLAND CASUALTY/ZURICH, which would provide LABRATO INSURANCE with, among other items, blank applications, training materials, information about the MARYLAND CASUALTY/ZURICH's services and policies.

10.     At all times material, LABRATO INSURANCE was able to accept payment of the insurance premium on behalf of MARYLAND CASUALTY/ZURICH.

11.     Further, MARYLAND CASUALTY/ZURICH would provide training to LABRATO INSURANCE concerning its policies and procedures.  The training would occur either at LABRATO INSURANCE's office, by telephone, on MARYLAND CASUALTY/ZURICH's secure website, or at conference held throughout the United States.

12.     With respect to the services it provides and at all times material, MARYLAND CASUALTY/ZURICH made statements, on its website, to the general public, including BOMBAY, that "we can tailor to the precise needs of your small business." See http://secure.zurichna.com/zus/industrys.nsf/pages/Zurich+North+America+connects+to+the+Small+Business+market.

13.     ZURICH INSURANCE SERVICES, INC., which was hired by MARYLAND CASUALTY/ZURICH to service its insurance policies, made statements on its website, on behalf of MARYLAND CASUALTY/ZURICH, to the general public, including BOMBAY LIQOURS, and to its agents, such as LABRATO INSURANCE, that "Zurich North America Small Business has a comprehensive product portfolio…tailored to the unique needs of your small business customers."  See **Exhibit "2."**

14.     At all times material, ZURICH INSURANCE SERVICES, INC. provided

marketing support for MARYLAND CASUALTY/ZURICH and training to its agents.

15.     In 2004, LABRATO INSURANCE was the top performing agent for MARYLAND CASUALTY/ZURICH's small business sector in Jacksonville.

16.     At all times material, Charles Bryant was an insurance agent at LABRATO INSURANCE and was acting within the course and scope of his employment.

17.     On or about February 27, 2004, Ravindu Patel, on behalf of BOMBAY, communicated to MARYLAND CASUALTY/ZURICH's agent, Charles Bryant that he wanted "full coverage" that would be tailored to the needs of its unique business, a retail business that primarily sold liquor and wine and which would cover BOMBAY for the main risk of its business arising from the sale of liquor and wine.

18.     On or about February 27, 2004, Charles Bryant of LABRATO INSURANCE accessed the secure website of MARYLAND CASUALTY/ZURICH and secured an insurance policy using MARYLAND CASUALTY/ZURICH's online application.

19.     At all times material, the online application, which was created by MARYLAND CASUALTY/ZURICH and housed on its secure website, could not be altered or changed by LABRATO INSURANCE.

20.     As soon as the electronic information was entered by Charles Bryant of LABRATO INSURANCE, the policy of insurance covering BOMBAY was issued and in effect.

21.     The policy which was issued was called a BOP policy.

22.     At the time that MARYLAND CASUALTY/ZURICH issued the Small Business Retail Insurance Policy to BOMBAY, LABRATO INSURANCE was aware that it was insuring a retail business that primarily sold liquor and wine.

23.     At no time did LABRATO INSURANCE attempt to tailor the policy issued to BOMBAY to meet the needs of its business, i.e. to cover it for risks arising out of the sale of liquor and wine.   However, at all times material and in February of 2004, Charles Bryant, on behalf of LABRATO INSURANCE, misrepresented to BOMBAY that it was fully covered and insured for losses arising out of the sale of liquor and wine.

24.     On or about August 4, 2011, BOMBAY was provided with notice of the underlying claim being made by the Case family arising out of the purported sale of liquor by BOMBAY.

25.     Upon receipt of the August 4, 2011 claim from the Case Family, BOMBAY provided timely notice of the letter to MARYLAND CASUALTY/ZURICH's agent, LABRATO INSURANCE.

26.     At all times material, BOMBAY believed that it was provided with full coverage and that it would be insured for a loss arising out of the sale of liquor or wine.

27.     For the first time since the issuance of the 2004 policy, MARYLAND CASUALTY/ZURICH advised BOMBAY that the Small Business Retail Insurance Policy did not provide comprehensive coverage to BOMBAY for its main risk, i.e. the selling of liquor and wine.

28.     Had LABRATO INSURANCE obtained Liquor Liability Coverage for BOMBAY, it would have been covered for an "injury" arising out of the sale of liquor, such as the claim brought by the Case family.

29.     On or about August 18, 2011, correspondence was forwarded by Farmers Insurance Exchange on behalf of MARYLAND CASUALTY, denying coverage to BOMBAY.

<u>See</u> **Exhibit "3."**

30.   Upon receipt of the August 18, 2011 letter, Ravindu Patel of BOMBAY communicated with Charles Bryant of LABRATO INSURANCE as to the contents of the letter and MARYLAND CASAULTY/ZURICH's denial of coverage.  Mr. Bryant informed Mr. Patel that he was in dismay because he believed that there was coverage available for the aforementioned <u>Case</u> claim.

31.   Even after being put on notice that MARYLAND CASUALTY/ZURICH did not provide insurance coverage that would cover the unique needs of BOMBAY, a retail business who primarily sold wine and liquor, on February 27, 2012, Charlie Bryant/LABRATO INSURANCE, by and through MARYLAND CASUALTY/ZURICH, yet again offered to issue an insurance policy to BOMBAY that did not provide coverage for claims arising out of the sale of liquor and delivered it to Mr. Patel to seek payment of the premium.

32.   Because of LABRATO INSURANCE and MARYLAND CASUALTY/ ZURICH's conduct and based on their refusal to provide coverage, BOMBAY had to retain the legal services of the firm of McDonald Toole Wiggins, P.A. and incur attorney fees and costs.

33.   Upon receipt of the lawsuit, on December 20, 2011, BOMBAY notified MARYLAND CASUALTY/ZURICH of the Complaint, BOMBAY's deadline to respond to the Complaint, and BOMBAY again asked for coverage and a defense.

34.   As no timely response was received by December 27, 2011 (BOMBAY's deadline to respond to the Complaint), a second letter was forwarded on January 5, 2012, to MARYLAND CASUALTY/ZURICH asking for a response.

35.   An extension of time was obtained to respond to the <u>Case</u> Complaint, however, as

no response was provided by MARYLAND CASUALTY/ZURICH, an Answer to the Complaint and discovery was propounded upon the parties by McDonald Toole Wiggins, P.A. on January 6, 2012.

36.    On or about January 12, 2012, a reservation of rights letter was issued by MARYLAND CASUALTY/ZURICH claiming that there were coverage issues, and MARYLAND CASUALTY/ZURICH would proceed to defend the matter under a complete reservation of rights.  Specifically, there was no coverage available under the policy for the Case claims.  See **Exhibit "4."**

### COUNT I – NEGLIGENT MISREPRESENTATION OF LABRATO INSURANCE & BONDING, INC.

37.    Paragraphs 1 through 36 are repeated and realleged as if fully set forth herein.

38.    At all times material, LABRATO INSURANCE, by and through MARYLAND CASUALTY/ZURICH purported to provide comprehensive coverage under its Small Business Retail Insurance Program to small retail businesses in Florida and would tailor its program to the unique needs of the small business customer.

39.    At all times material, LABRATO INSURANCE was fully aware that BOMBAY'S retail business was exclusive to the sale of liquor and wine and that its main risk would arise from such liquor and wine sales (hereinafter referred to as "the main risk").

40.    Knowing this information, LABRATO INSURANCE misrepresented to BOMBAY that it would provide comprehensive insurance coverage to cover its main retail business risks under MARYLAND CASUALTY/ZURICH's Small Business Insurance Program.

41.    More specifically, Charles Bryant of LABRATO INSURANCE represented to BOMBAY that it would receive full coverage which included liquor liability coverage.

42.     Based upon these representations, BOMBAY believed LABRATO INSURANCE was obtaining liquor liability coverage through MARYLAND CASUALTY/ZURICH.

43.     Despite these representations, LABRATO INSURANCE failed to ensure that BOMBAY was provided with liquor liability coverage, as previously represented.

44.     Instead, LABRATO INSURANCE obtained an insurance policy for BOMBAY that excluded from coverage liability arising out the sale of liquor and wine, the main risk of the business.  See **Exhibit "1"** at Page 1.

45.     In doing so, LABRATO INSURANCE knowingly misrepresented the insurance coverage being provided to BOMBAY.

46.     LABRATO INSURANCE intended to induce BOMBAY to rely on these misrepresentations so that it would get its share of the premium paid by BOMBAY.

47.     Due to BOMBAY'S justifiable reliance on said misrepresentations to its detriment, Third Party Plaintiff BOMBAY has suffered injury, to wit, the denial of insurance coverage, exposure to claims from the Case family as well as claims from MARYLAND CASUALTY/ZURICH,, the incurring of attorney's fees and costs to defend the Maryland litigation, as well as the Case litigation and another relief that this Court deems appropriate.

## COUNT II – NEGLIGENCE AGAINST LABRATO INSURANCE & BONDING, INC.

48.     Paragraphs 1 through 36 are repeated and realleged as if fully set forth herein.

49.     At all times material, LABRATO INSURANCE, as an agent for MARYLAND CASUALTY/ZURICH, purported to provide comprehensive coverage under its Small Business Retail Insurance Program to small retail businesses in Florida.

50.     At all times material, LABRATO INSURANCE was fully aware that

BOMBAY'S retail business was exclusive to the sale of liquor and wine and that its main risk would arise from such liquor and wine sales (hereinafter referred to as "the main risk").

51.    At all times material, LABRATO INSURANCE had a duty to provide comprehensive insurance coverage to BOMBAY, a small retail business in Florida, to cover the main risk under its Small Business Insurance Program and to meet its unique business needs and as requested by BOMBAY.

52.    At all times material, LABRATO INSURANCE had a duty to fully and completely explain to the insured the material economic or business terms and conditions of the insurance coverage provided by MARYLAND CASUALTY/ZURICH and provide adequate coverage to protect against its main risk.

53.    At all times material, LABRATO INSURANCE breached its duty by failing to protect its insured, BOMBAY, from the risk arising out of BOMBAY's main business risk, i.e., the selling of liquor and wine, when it issued a Retail Small Business Insurance Policy to BOMBAY and excluded from coverage liability arising out the sale of liquor and wine.

54.    As a result of this breach, Third Party Plaintiff BOMBAY has suffered injury, to wit, the denial of insurance coverage, exposure to claims from the Case family as well as claims from MARYLAND CASUALTY/ZURICH, the incurring of attorney's fees and costs to defend the Maryland litigation, as well as the Case litigation and any other relief that this Court deems appropriate.

WHEREFORE, the Third Party Plaintiff, SHREEJEE NI PEDHI'S, INC. d/b/a BOMBAY LIQUORS, demands judgment for damages and special damages (including, but not limited to those items listed herein), together with interest, costs, and reasonable attorney's fees

against the Counter-Defendant, LABRATO INSURANCE & BONDING, INC., and any other further relief that this court may deem proper and necessary.

## **DEMAND FOR JURY TRIAL**

BOMBAY demands trial by jury on all issues so triable.

_/s/ Bianca G. Liston_
**MICHAEL J. WIGGINS, ESQUIRE** ( Lead Trial Counsel)
Florida Bar No. 818860/mwiggins@mtwlegal.com
**BIANCA G. LISTON, ESQUIRE**
Florida Bar No. 0555592/bliston@mtwlegal.com
MCDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, Florida 32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895
_Attorneys for Defendan/Third Party Plaintiff, Shreejee Ni Pedhis, Inc._

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on **September 27, 2012**, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to the following:

**Todd M. Davis, Esquire/**Tdavis@hinshawlaw.com
**Sina Bahadoran, Esquire/**sbahadoran@hinsawlaw.com
**J. Derek Womack, Esquire/**jwomack@hinshawlaw.com
Hinshaw & Culbertson, LLP
9155 South Dadeland Blvd., Suite 1600
Miami, Florida  33156-2741

**James A. Farson, Esquire/**jfarson@lindellfarson.com
**Roger K. Gannam, Esquire/**rgannam@lindellfarson.com
**Douglas Bradford Hughes, Esquire/**dhughes@lindellfarson.com
**LINDELL & FARSON, P.A.**
12276 San Jose Boulevard, Suite 126
Jacksonville, Florida 32223-8630

*/s/ Bianca G. Liston*
MICHAEL J. WIGGINS, ESQ.
Florida Bar No. 818860
BIANCA G. LISTON, ESQ.
Florida Bar No. 0555592
MCDONALD TOOLE WIGGINS, P.A.