## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MARYLAND CASUALTY COMPANY,
a Maryland corporation,

      Plaintiff,

vs.                                                            CASE NO: 3:12-cv-00121-MMH-MCR

SHREEJEE NI PEDHI'S, INC. d/b/a
BOMBAY LIQUORS, a Florida corporation,
TERRY L. CASE and ELIZABETH R. CASE,
personal representatives of the estate of
CATHERINE E. CASE,

      Defendants.

_____/

## MARYLAND CASUALTY'S MOTION TO DISMISS
## BOMBAY'S SECOND AMENDED COUNTERCLAIM

MARYLAND CASUALTY COMPANY ("Maryland Casualty"), pursuant to Federal Rule

of Civil Procedure 12(b)(6), moves to dismiss the second amended counterclaim by SHREEJEE

NI PEDHI'S, INC. d/b/a BOMBAY LIQUORS ("Bombay") [DE 64], and states:

### INTRODUCTION

This case involves a package store's attempt to obtain insurance coverage for liquor

liability in spite of the fact that such liability is expressly excluded under its insurance policy.

Recognizing that the policy plainly provides no such coverage, Bombay now attempts to treat

Maryland Casualty like its insurance agent, arguing that Maryland Casualty procured insufficient

coverage for it.  Setting aside the implausible and fatuous nature of this argument, Florida law is

well-settled that a cause of action for negligent procurement of insurance does not accrue unless

and until a judicial declaration that the insured is not covered under the subject policy. *Blumberg

v. USAA Cas. Ins. Co.*, 790 So.2d 1061, 1065-66 (Fla. 2001).  Accordingly, Bombay has no

cause of action against Maryland Casualty, and its second amended counterclaim should be dismissed.

Moreover, Bombay's second amended counterclaim is little more than a recital of legal and factual conclusions, which it attempts to cobble together into causes of action, none of which are adequately pled.  Each of its claims rest on the unsupported conclusion that Maryland Casualty has, in some unexplained manner, misrepresented the scope of coverage afforded by the policy.  As the Court has previously explained in its prior decision [DE 31], Bombay's opinions and conclusory allegations cannot survive a motion to dismiss.  Nonetheless, in spite of the extensive discovery conducted in this case, Bombay has come no closer to pleading any of its causes of action with the requisite degree of particularity.

Furthermore, Bombay submits that it was unaware that the policy excluded liquor liability, in spite of the plain language of the liquor liability exclusion, and in spite of the fact that it held and repeatedly renewed the policy for over seven years prior to the underlying accident.  Again setting aside the implausibility of Bombay's arguments, a party's ignorance of a contract's terms is no bar to their enforcement.  For these reasons and those explained below, Bombay's second amended counterclaim should be dismissed.[1]

## ARGUMENT AND CITATION OF AUTHORITY

### Standard of Inquiry for Motions to Dismiss

When a defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must determine if the complaint's allegations plausibly suggest that the

14751580v1  2701

plaintiff has a right to relief. *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008).  A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted).  Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Accordingly, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citation omitted).  As discussed in the following sections, Bombay's conclusory and implausible allegations fall well short of the initial pleading threshold, and its second amended counterclaim should be dismissed.

**Allegations of Fraud and Mistake Must be Pled with Particularity**

Bombay's counterclaim is entirely couched in the conclusory allegation that Maryland Casualty misrepresented the scope of coverage of the subject policy.  Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.*  Rule 9(b) is not limited to causes of action for fraud as such, but also extends to the class of misrepresentation alleged by Bombay.  To wit, "'because negligent misrepresentation sounds in fraud,' this heightened

---

[1] Though this is Maryland Casualty's third attempt at dismissing Bombay's counterclaim, the Court has not considered most of Maryland Casualty's arguments on their merits.  Maryland Casualty's first motion to dismiss was struck as moot when Bombay amended its counterclaim the first time.  On Maryland Casualty's second motion to dismiss, the Court only considered its

pleading standard applies to claims of negligent as well as fraudulent misrepresentation." *Travelers Property Cas. Co. of Am. v. Charlotte Pipe & Foundry Co.*, No. 6:11cv19, 2012 WL 983783, at * 6 (M.D. Fla. Mar. 22, 2012) (quoting *Linville v. Ginn Real Est. Co.*, 697 F.Supp.2d 1302, 1306 (M.D. Fla. 2010)); *see also Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993) ("[I]n Florida an action for negligent misrepresentation sounds in fraud rather than negligence."); *Pruco Life Ins. Co. v. Brasner*, No. 10–80804–CIV, 2011 WL 2669651, at *4 (S.D. Fla. July 7, 2011) ("Rule 9(b) governs negligent misrepresentation claims in Florida because such claims sound in fraud rather than negligence.").

Rule 9(b) requires that misrepresentation be plead with "particularity," which means that "a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *Principal Bank v. First Am. Mortg., Inc.*, No. 2:10–cv–190–FtM–29DNF, 2012 WL 473507, at *4 (M.D. Fla. Feb. 14, 2012) (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Satisfying Rule 9(b) requires stating "the who, what, when [,] where, and how: the first paragraph of any newspaper story."). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*,

arguments concerning Bombay's count for reformation.

14751580v1 2701

428 F.3d 1008, 1012 (11th Cir. 2005).  As explained below, Bombay utterly fails to satisfy the strictures of Rule 9(b), and its second amended counterclaim should be dismissed.

## I.      BOMBAY'S COUNTERCLAIMS ARE IMPROPER AND PREMATURE CLAIMS FOR NEGLIGENT PROCUREMENT

In all three counts of its second amended counterclaim, Bombay seeks relief from not based on the terms of the insurance contract itself, but on the premise that Maryland Casualty "individually and through its agent" misrepresented to Bombay the type of insurance that it was sold. [DE 60-1, ¶¶ 53, 66, 71].  As a matter of law, these arguments are premature and must be dismissed.  As Labrato Insurance & Bonding, Inc. ("Labrato") noted in its response to Bombay's third-party complaint, under Florida law, a negligent procurement cause of action does not accrue until the coverage proceedings are final. *Blumberg*, 790 So.2d at 1065.[2]  In its counterclaim, Bombay is suing Maryland Casualty for allegedly selling it the wrong coverage. Yet, Bombay asserts that there is indeed coverage here.[3]  Since there has been no determination regarding whether Bombay is covered for the allegations in the underlying lawsuit, Bombay's

---

[2] In regards to Bombay's anticipated "12(g)" argument, none of Maryland Casualty's arguments in this motion are barred as Bombay's Second Amended Counterclaim and Third Party Complaint is vastly different from the original counterclaim it filed in this action seven months ago.  As a mere illustration, in addition to the allegations regarding Maryland Casualty's liability for the actions of an entirely new party, it asserts a myriad of different factual and legal basis for their claims, as evidenced by the ballooning of allegations from 39 to 76 paragraphs. Accordingly, Maryland Casualty is not barred from asserting any argument contained in this motion to dismiss, because it is addressing these arguments for the first time.  "[A] Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion." Wright and Miller, *Federal Practice and Procedure Section 1138* (3d ed. 2002); *see also Sears Petroleum & Transport Corp. v. Ice Ban Am., Inc.,* 217 F.R.D. 305, 307 (N.D. N.Y. 2003) (holding that the amendment of a complaint permits a defendant to object to the new matters raised).

[3] Bombay has denied Maryland Casualty's allegations that the Liquor Liability Exclusion applies and has asserted eight affirmative defenses in support of its argument for coverage.

14751580v1  2701

counterclaims against Maryland Casualty for failing to procure it the proper insurance are premature.

In *Blumberg*, the Florida Supreme Court reviewed whether a negligent procurement case against a party that failed to procure proper insurance was premature. *Id.* at 1063. Specifically, the insured sought to have his valuable baseball cards insured and the insurance agent informed the insured that they were already covered. *Id.* The insured's baseball cards were stolen and the insurance company denied coverage for the claim. *Id.* When the insured sued the agent for negligent procurement, the court held that the insured's action against the agent did not accrue until the coverage action was judicially determined since there was no evidence that the insured had been damaged yet. *Id.* at 1065. In other words, accrual of the negligent procurement cause of action began when the court held that there was no coverage for the baseball cards. Until then, the insured would have suffered no damages.

The rule in *Blumberg* is on point. A party cannot procure the wrong insurance while a court is still determining whether the insurance applies. Likewise, this Court has been asked to determine whether Maryland Casualty has a duty to defend and indemnify Bombay for the underlying claim. If this court rules that it does have such duties, there will have been no damages to Bombay for Maryland Casualty's alleged failure to procure the proper insurance. In short, Bombay has suffered no actual damages at this point.[4] This fact is readily apparent from Bombay's own counterclaim where, in two of its counts, it seeks damages for "the possible denial of insurance coverage," while the third seeks to add coverage for undisclosed "losses arising out of the sale of alcohol." [DE 60-1, ¶¶ 61, 67, 73.] At this point, there has been no

14751580v1  2701

judicial determination that Bombay is not covered and, therefore, no damages.[5]  *See Blumberg*,

790 So.2d at 1065 ("a negligence/malpractice cause of action accrues when the client incurs

damages at the conclusion of the related or underlying judicial proceedings or, if there are no

related or underlying judicial proceedings, when the client's right to sue in the related or

underlying proceeding expires.").

Although *Blumberg* involved an insured's suit against an insurance agent, Bombay makes

the exact allegations against Maryland Casualty that it would, and is, making against its

insurance agent, Labrato.  This is readily apparent simply by comparing Counts I and II against

Maryland Casualty in the second amended counterclaim to Counts I and II against Labrato in the

third-party complaint.   Make no mistake, the purpose of Bombay's counterclaims against

Maryland Casualty is clear: Bombay claims that Maryland Casualty sold it the wrong insurance.

In the second amended counterclaim, every count focuses on whether Maryland Casualty

procured it the insurance that it sought, either individually or through its agents.  Specifically, in

Count I, Bombay alleges that "Maryland Casualty was fully aware that Bombay's retail business

was exclusive to the sale of liquor and wine" and that Maryland Casualty "misrepresented to

Bombay that it would provide comprehensive insurance coverage to cover its main business risks

under its Small Business Insurance Program." [DE 60-1, ¶¶ 52-53].   Next, Maryland Casualty

---

[4] Attorney's fees and costs that Bombay has incurred do not count as damages in this situation. *See Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A.*, 796 So.2d 504, 506 (Fla. 2001).

[5] In addition, the underlying lawsuit is still in progress.  There has not even been a determination that Bombay is liable for the injuries alleged by the Cases.  Accordingly, Bombay has not yet suffered redressable harm for Maryland Casualty or Labrato's alleged failure to procure it insurance that would have covered that lawsuit. *See Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A.*, 796 So.2d 504, 506 (Fla. 2001) (harm cannot be determined until the conclusion of the litigation.).  Accordingly, Bombay's counterclaims are premature for this reason as well.

14751580v1  2701

"failed to take any steps to ensure that the insurance coverage being provided to Bombay was tailored to the needs of Bombay's unique business…."[DE 60-1, ¶ 56].  These allegations are almost identical to the claims Bombay has made against Labrato, as evidenced by a cursory comparison of these allegations to paragraphs 39, 40, and 43 of Bombay's third-party complaint. [DE 60-1, at pp. 24-25, ¶¶ 39-40, 43].  In Count II, Bombay alleges that Maryland Casualty was aware that Bombay's retail business was exclusive to the sale of liquor and wine" and it failed to "protect its insured, Bombay, from the risk arising out of Bombay's main business risk." [DE 60-1, ¶¶ 64, 66; *Compare* Third-Party Complaint at pp. 26, ¶¶ 50, 53].  In Count III, Bombay seeks a reformation of the insurance contract to provide the coverage that "Bombay was induced into the understanding" that it thought it received. [DE 60-1, ¶ 75].  Because Bombay is suing Maryland Casualty for failing to procure the proper insurance, Maryland Casualty is entitled to assert the *Blumberg* accrual defense.

Coverage under the policy is at issue in this case and, therefore, Bombay's claims regarding whether the proper coverage was procured are premature.  Although Labrato notes that Bombay's claim is premature based on Bombay's reformation count, *see* DE 64, p. 8, Bombay has denied the allegations in Maryland Casualty's complaint and has asserted eight affirmative defenses. [*See* DE 60-1, pp. 4-6].  In short, Bombay is arguing that it is covered for the allegations in the underlying complaint.  If Bombay is correct and there is coverage under the policy, then it will have incurred no damages for Maryland Casualty's alleged failure to procure the insurance it allegedly requested.  As held in *Blumberg*, the purpose of waiting until the coverage case is determined is (1) the fact that the party may never incur any actual damages and (2) the requirement that the damages incurred are causally related to the alleged negligence.

*Blumberg*, 790 So.2d at 1065.  Here, Bombay may never incur any actual damages. Based on the speculative nature of Bombay's claims for damages, this Court must dismiss its counterclaims as premature.

## II.    BOMBAY ENTIRELY FAILS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

### a.    Bombay Fails to Plead Misrepresentation with Particularity

At the outset, Count I fails to state a claim for negligent misrepresentation because it fails to meet the pleading standards of Fed. R. Civ. P. 9(b).  None of Bombay's allegations state with any particularity the negligent misrepresentation by Maryland Casualty, which is a requirement to survive dismissal.  Rather, Bombay simply concludes that Maryland Casualty "misrepresented to [Bombay] that it would provide comprehensive insurance coverage to cover its main retail business risks." [DE 60-1, ¶ 53].  Additionally, Bombay contends that "[a]t all times material, Charles Bryant…represented…that MARYLAND CASUALTY/ZURICH had issued a policy to BOMBAY which covered him for, among other items, losses arising out of the sale of liquor and wine." [DE 60-1, ¶ 30].  Needless to say, these unsubstantiated conclusions fall well short of the particularity pleading standard required of Rule 9(b).  "Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x 81, 86 (11th Cir. 2002); *see also U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [a] conclusory fashion.").  Satisfying Rule 9(b) requires that the pleading describe "'(1) <u>precisely what statements were made</u> in what documents or oral representations or what omissions were made, and (2) <u>the time and place</u> of each such statement and <u>the person</u> responsible for making (or, in

the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)) (underscore added).   Count I provides none of this information.   Bombay does not explain, with any specificity, when the alleged misrepresentation was made, how it was made, the time or place it was made, or the contents or language of the misrepresentation.   Accordingly, Count I should be dismissed because it fails to satisfy the applicable pleading standards set forth by Rule 9(b).

**b.      Bombay Fails to Adequately Allege the Elements of Negligent Misrepresentation**

To the extent that Bombay's general allegations allege any facts with particularity, they entirely fail to allege the elements of negligent misrepresentation.   Specifically, Bombay fails to allege a "misrepresentation of material fact" as required of a claim for negligent misrepresentation.   "To state a claim for negligent misrepresentation, the plaintiff must demonstrate that the defendant made a statement of fact which was untrue." *Jaffe v. Bank of Am., N.A.*, 667 F.Supp.2d 1299, 1320 (S.D.Fla. 2009).   Bombay alleges that following two statements, both made in advertisements, induced it into purchasing the subject insurance from Maryland Casualty:

> "[W]e <u>can</u> tailor to the precise needs of your small business." [DE 60-1, ¶ 20] (underscore added).

> "Zurich North American Small Business <u>has</u> a comprehensive product portfolio…tailored to the unique needs of your small business customers." [DE 60-1, ¶ 20] (underscore added).

Needless to say, these promotions do not constitute misrepresentation of material facts.   These statements are promotional assessments of what Zurich <u>can</u> provide, and what products it <u>has</u>

14751580v1  2701

available.  Bombay does not explain how these statements were material to the negotiation of its policy with Maryland Casualty, nor does Bombay explain how these are misstatements at all.

Furthermore, Bombay fails to explain how reading these two statements to extend liquor liability to the subject policy constitutes "justifiable reliance," which is another required element of negligent misrepresentation. *See Romo v. Amedex Ins. Co.,* 930 So.2d 643, 649 (Fla. 3d DCA 2006).  These are promotional statements published gratuitously by Zurich North American—not warranties communicated to Bombay in the course of the negotiation of the policy.  It is patently unreasonable to rely on such gratuitous information because "the recipient of [gratuitous] information could not reasonably rely on it because he should not expect the person making the statement to exercise the diligence and care in formulating it that would justify reliance." *Blumstein v. Sports Immortals, Inc.*, 67 So.3d 437, 441 (Fla. 4th DCA 2011).  Accordingly, it is patently absurd and unjustifiable as a matter of law for Bombay to rely on these statements to determine the scope of coverage of an insurance policy it subsequently purchased.  Bombay consequently fails to state a claim for negligent misrepresentation.

**c.      Bombay's Reliance was Unreasonable as a Matter of Law**

In addition, Count I should be dismissed because Bombay fails to state a claim for negligent misrepresentation because reliance on Maryland Casualty's alleged misrepresentation was unreasonable as a matter of law.  "[A] claim for negligent misrepresentation under Florida law requires a showing that the recipient of the information justifiably relied on the erroneous information." *Specialty Marine & Industrial Supplies, Inc. v. Venus*, 66 So.3d 306, 310 (Fla. 1st DCA 2011).  "A party has no right to rely upon alleged oral misrepresentations that are adequately covered and expressly contradicted in a later written contract." *Rosa v. Amoco Oil Co.*, 262 F.Supp.2d 1364, 1368 (S.D. Fla. 2003).  Accordingly, where one contracting party

relies on another's representations that are contradicted by the written contract, that party has no claim for negligent misrepresentation.

Bombay alleges that it believed the policy covered liquor liability based on representations made by Maryland Casualty and/or Labrato prior to the execution of the policy, which clearly states on its face that it excludes such liability.  Such reliance is unreasonable as a matter of law.  *See Rosa,* 262 F.Supp.2d at 1367-68; *see also Hillcrest Pac. Corp. v. Yamamura,* 727 So.2d 1053, 1056 (Fla. 4th DCA 1999) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.").  "[R]eliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1342 (S.D. Fla. 1999).[6]  "[I]t is a basic tenet of contract law that reliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the parties." *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1428 (S.D. Fla. 1996).  Bombay's argument simply ignores the import of this substantial and instructive authority.

To the extent that Bombay may allege that it relied on misrepresentations made subsequent to the execution of the original policy on Febuary 27, 2004, this argument is of no moment.  Any representations made during the course of one policy period were, of course, made prior to the subsequent policy period.  Prior to the underlying accident, Bombay was

---

[6] The Southern District in *Rosa* and *Eclipse* dealt with claims of both fraud and negligent misrepresentation, and treated both using the same analysis.

14751580v1  2701

presented with a policy that expressly excluded liquor liability coverage *eight separate times*, and Bombay agreed to the policy's term on each occasion.

**d.      Bombay Presumably Knew that the Policy Did Not Cover Liquor Liability**

Furthermore, Bombay's reliance on Maryland Casualty's alleged misrepresentations is unreasonable as a matter of law because Bombay presumably knew that the policy would not cover liquor liability prior to signing it.  In Florida, "[a] person who signs an insurance contract is presumed to know its contents." *Am. Home Assurance Co. v. Phineas Corp.*, 347 F.Supp.2d 1231, 1238 (M.D. Fla. 2004) (citing *Swift v. North Am. Co. for Life & Health Ins.*, 677 F.Supp. 1145, 1150 (S.D. Fla. 1987).  This presumption is complementary to the insured's duty to read a policy before signing it. *See Wirt v. Central Life Assur., Co.*, 613 So.2d 478, 478 (Fla. 2d DCA 1992) ("Generally parties to a written instrument have a duty to learn and to understand the contents of that instrument before signing it."); *Reliance Ins. Co. v. D'Amico*, 528 So.2d 533, 534 (Fla. 2d DCA 1988) (same).  "It is axiomatic that absent unusual circumstances … one cannot claim ignorance of the contents of a written instrument which one signs." *Bankers Ins. Co. v. Vasquez*, 483 So.2d 440, 442 (Fla. 4th DCA 1985).

As Bombay points out, it has been insured by Maryland Casualty since 2004. Accordingly, Bombay not only had a duty to read and learn the contents of the policy; it had ample opportunity to do so prior to the underlying accident.  Bombay is consequently presumed to have known the contents of the policy prior to its execution in 2004, and during the ensuing periods for which the policy was renewed.  Because it knew of the terms of the policy, then, any reliance Bombay may have placed on prior representations made by Maryland Casualty was patently unjustified, and its claim for negligent misrepresentation fails.  "'[A] person has no right to shut his eyes or ears to avoid information, and then say that he has no notice.'" *Citizens Prop.*

*Ins.*, 49 So.3d at 778-79 (quoting *Sapp v. Warner*, 141 So. 124, 127 (1932)).  Accordingly, the Court should dismiss Bombay's claim for negligent misrepresentation.

## III.   BOMBAY'S CLAIM FOR GENERAL NEGLIGENCE IS PREMATURE AND INADEQUATELY PLED

### a.   Bombay Improperly Alleges Negligent Procurement

As explained above in Section I, Bombay essentially alleges that Maryland Casualty failed to procure it the insurance coverage it sought.  Bombay alleges that Maryland Casualty had a duty to provide it with its desired insurance coverage, which is characteristic of a negligent procurement claim against an insurance agent.  As explained above in section I, an action for negligent failure to procure insurance is not ripe until a coverage determination is final. *Blumberg*, 790 So.2d at 1065-67.  As coverage is still being litigated in this matter, any claim for negligent procurement is premature.  Accordingly, Count II should be dismissed.

### b.   Bombay Does Not Sufficiently Allege the Existence of a Duty

Count II fails to state a claim for negligence because it alleges no "sufficient factual matter" that would plausibly give rise to a negligence claim. *Ashcroft*, 129 S.Ct. at 1949. Perhaps most notably, Bombay fails to allege any facts whatsoever to substantiate its conclusion that Maryland Casualty "undertook a duty to provide comprehensive insurance coverage to [Bombay]."  The establishment of a duty of care is "a minimal threshold legal requirement for opening the courthouse doors" to a claim of negligence. *McCain v. Fla. Power Corp.*, 593 So.2d 500, 502 (Fla. 1992); *see also Langbehn v. Public Health Trust of Miami-Dade County*, 661 F.Supp.2d 1326, 1335 (S.D. Fla. 2009) (Among other elements, a claim for negligence requires "the existence of a duty to conform to a certain standard of conduct for the protection of others against unreasonable risks.").

14751580v1  2701

Bombay entirely fails to explain how this duty arose, but merely concludes that it exists. Maryland Casualty is unaware of any authority that imposes a duty on an insurer to provide "comprehensive insurance coverage" to all its potential customers, or a duty that that requires an insurer to provide coverage for its insureds beyond the terms of their policies. Accordingly, Bombay's claim for negligence should be dismissed

**c.      Bombay's Central Allegation of Misrepresentation is Inadequately Pled**

Count II also echoes Bombay's allegations that Maryland Casualty misrepresented the terms or scope of coverage in the policy it issued Bombay, stating "MARYLAND CASUALTY/ZURICH … purported to provide comprehensive coverage." [DE 60-1, ¶ 63]. As explained in section II.a, Bombay fails to adequately allege these misrepresentations pursuant to the particularity standards set out in Fed. R. Civ. P. 9(b). This alleged misrepresentation is pled no better here than it is in Count I, and is in fact based on the same allegations. Accordingly Count II should be dismissed.

**d.      Bombay Fails to Demonstrate how Maryland Casualty's Policy is Illusory**

In Count II, Bombay also opines that Maryland Casualty's policy is illusory. The Florida Supreme Court long ago considered a similar liquor liability exclusion, which the insured argued rendered the policy illusory. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979). Enforcing the exclusion unequivocally, the Court reasoned that "[n]o deception or misrepresentation is involved here and we do not doubt that we give true effect to the intentions of the parties, which is the central concern of the law of contracts even in the realm of insurance where there are unique public policy considerations." *Id.* Accordingly, Bombay cannot plausibly claim that the coverage afforded by Maryland Casualty was illusory, injurious, or anything less than what it bargained for. Accordingly, Count II should be dismissed.

14751580v1  2701

## IV.   BOMBAY FAILS TO STATE A CLAIM FOR REFORMATION WITH ANY PARTICULARITY

### a.   Bombay's Claim for Reformation is a Hollow Recitation of Conclusions

Bombay's claim for reformation is little but a bare-bones recitation of legal conclusions, and should accordingly be dismissed.[7]   To wit, nowhere in its counterclaim does Bombay identify the basis for its claim for reformation.  Rather, Bombay simply states:

> Further, if the policy did not embody that agreement, it was the result of:
> a.   A mutual mistake of law or fact;
> b.   a unilateral mistake by BOMBAY coupled with the inequitable conduct of MARYLAND CASUALTY/ZURICH and LABRATO INSURANCE & BONDING, INC.
> c.   inadvertence; or
> d.   accident.

[DE 60-1, ¶ 76].  This is a textbook scattergun allegation, consisting entirely of conclusions and empty of merit.  Nowhere in its counterclaim does Bombay indicate the ostensible mistake, inequitable conduct, inadvertence, or accident that gives rise to this claim for reformation.  For this reason alone, its claim for reformation should be dismissed.

### b.   Bombay Fails to Plead Inequitable Conduct with Any Particularity

To the extent that Count III is based on Maryland Casualty's alleged inequitable conduct, Bombay entirely fails to state a claim for reformation.   The remedy of reformation is only available when "the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument." *Goodall v. Whispering Woods Ctr., L.L.C.*, 990 So.2d 695, 699 (Fla. 4th DCA 2008).  This is because under Florida law, there is a "strong presumption arising from [an insurance] policy that it correctly expresses the intention of the parties" and clear and convincing evidence is required to overcome this presumption. *Niagara*

---

[7] A cursory examination reveals that Bombay's count for reformation is materially identical to the same count the Court previously dismissed. [DE 22]; [DE 48]; [DE 57].

14751580v1  2701

*Fire Ins. Co. v. Allied Elec. Co.,* 319 So.2d 594, 595 (Fla. 3d DCA 1975); *see also Resort of Indian Spring, Inc. v. Indian Spring Country Club, Inc.,* 747 So.2d 974, 976-77 (Fla. 4th DCA 1999); *USAA Cas. Ins. Co. v. Threadgill,* 729 So.2d 476, 478 (Fla. 4th DCA 1999). In order to state a cause of action for reformation, a party must allege that "as a result of a mutual mistake or a unilateral mistake by one party coupled with the inequitable conduct of the other party, the insurance contract fails to express the agreement of the parties." *Romo*, 930 So.2d at 649 (Fla. 3d DCA 2006) (citing *Kolski ex rel. Kolski  v. Kolski,* 731 So.2d 169, 172-73 (Fla. 3d DCA 1999)).

The inequitable conduct complained of by Bombay is presumably the same nebulous misrepresentation complained of in its claim for negligent misrepresentation, which has been addressed in section II. As with that claim, Bombay alleges fraud or misrepresentation, and again fails to do so with the specificity required by Fed. R. Civ. P. 9(b). Bombay again alleges "an ongoing corporate scheme, pattern and practice of suppression, misrepresentation, or failure to reveal pertinent facts relating to its Small Business Retail Insurance Program," [DE 60-1, p. 71]. Again, Bombay fails explain who made these alleged misrepresentations, how they were made, the time or place it was made, or their contents. Rather, Bombay simply concludes that "[Maryland Casualty] represented that it would insure a retail business under its Small Business Retail Insurance Program providing a comprehensive product for its unique needs." [DE 60-1, ¶ 71]. The mere conclusion that Maryland Casualty engaged in deceitful conduct is insufficient to satisfy the pleading standard set out in Rule 9(b). *See West Coast Roofing*, 287 Fed. App'x at 86. Bombay's claim for reformation should consequently be dismissed.

**c.     Bombay is Not Entitled to Reformation Because the Policy Reflects the Intent of the Parties**

Bombay cannot plausibly argue that it is entitled to reformation under any theory because it presumably knew that the policy would not provide coverage for liquor liability. It is a

14751580v1  2701

prerequisite for reformation that a party's intent materially differs from the written contents of the contract. *Gee v. U.S. Bank Nat. Ass'n*, 72 So.3d 211, 216 n. 4 (Fla. 5th DCA 2011) ("The purpose of reformation is to make an instrument accurately express the true intention of the parties at the time of its execution.") (citing *Providence Square Ass'n v. Biancardi*, 507 So.2d 1366 (Fla.1987)); *Chanrai Investments, Inc. v. Clement,* 566 So.2d 838, 839 (Fla. 5th DCA 1990) ("The purpose of reformation of an instrument is to make the instrument accurately express the true intention or agreement of the parties to the instrument or agreement at the time of its execution."). As explained in section II.d, a person is presumed to know the contents and effects of the written contracts it agrees to. *Am. Home Assurance Co.*, 347 F.Supp.2d at 1238. Having presumably assented to the terms of the policy, Bombay cannot plausibly contend that its understanding of the policy differed materially from its written contents. Accordingly, the written terms of the policy express the intent of the parties, and reformation is inappropriate.

In many ways, this case is foursquare with *Samet v. Prudential Ins. Co. of America*, 294 So.2d 35 (Fla. 3d DCA 1974). In *Samet,* the insured sought to reform a disability insurance policy six years after it was issued, in order to eliminate a provision that limited his benefits. *Id.* at 35-36. The court declined to reform the contract, saying:

> For reformation of an insurance contract for fraud or mutual mistake it must be shown that the policy failed to express or conform to the contemplation of the parties, by evidence sufficient to overcome a presumption arising from the policy that it correctly expressed the intention of the parties. Having accepted, examined and retained the policy for an extended time without questioning the provisions thereof, the burden was on the plaintiff to show that a different contract was entered into from that which was reduced to writing.

*Id.* at 36 (internal citations omitted). Accordingly, Bombay is presumed to have known the contents of the policy at the time it was executed, and accordingly bears the burden of showing that the policy as written differs from that agreed upon. Nowhere does Bombay count for allege

"sufficient factual matter" that plausibly suggests that it is entitled to reformation. *Ashcroft*, 129 S.Ct. at 1949.  For these reasons, the Court should dismiss Count III.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Bombay's second amended counterclaim.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

s/J. DEREK WOMACK
**SINA BAHADORAN**
Florida Bar No. 523364
sbahadoran@hinshawlaw.com
**J. DEREK WOMACK**
Florida Bar No. 93318
jwomack@hinshawlaw.com
2525 Ponce de Leon Boulevard
4th Floor
Miami, Florida 33134
Telephone:   305-358-7747
Facsimile:   305-577-1063

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2012, I e-filed this document using the CM/ECF system.  I further certify that I am unaware of any non-CM/ECF participants.

s/ J. DEREK WOMACK
J. DEREK WOMACK

14751580v1  2701